***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence and, accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Holmes, with modifications.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. The Industrial Commission has jurisdiction over this matter, and Plaintiff was the employee of Defendant City of Winston-Salem at the time in question.
2. Employer was a qualified self-insured.
3. Plaintiff suffered an injury by accident on or about February 11, 2007, which was accepted as compensable.
4. The average weekly wage is $591.46, which yields a compensation rate of $394.33 for total disability.
5. A pre-trial agreement was executed and submitted at the time of hearing. Pursuant to the pre-trial agreement and in subsequent communications from the parties, the Deputy Commissioner was informed that the issues at the time of hearing, were:
 A. Is Plaintiff's current disability, if any, caused by any injury that arose out of or in the course and scope of her employment?
 B. Are Plaintiff's gastrointestinal and other medical disorders causally related to the work-related injury, and if not, should Defendant be required to continue paying for those medical benefits?
 C. What is the extent of Plaintiff-employee's disability, if any?
 D. What benefits, if any, is Plaintiff-employee entitled to recover?
6. The following documents were introduced as Stipulated Exhibits
 • Exhibit 1 — Industrial Commission forms
 • Exhibit 2 — Two volumes of medical records in binders
 • Exhibit 3 — Responses to discovery
 • Exhibit 4 — Employee file *Page 3 
 • Exhibit 5 — Records of Florida workers' compensation claims
 ***********
Based upon all of the competent, credible evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Prior to her compensable injury in this case on February 11, 2007, Plaintiff suffered a non-work related injury to her left ankle requiring surgery, which was performed by Dr. Michael E. King of Orthopaedic Specialists of the Carolinas in April 2006. With respect to her prior ankle injury, Plaintiff returned to full duty work as a crime scene investigator by December 2006. Plaintiff also suffered back problems prior to her compensable work injury, for which she received treatment, including epidural steroid injections, in August and September 2006.
2. Plaintiff suffered an admittedly compensable injury to her ankle on February 11, 2007, when she stepped in a hole in Defendant-Employer's parking lot while inspecting Defendant-Employer's vehicle.
3. Following her injury, Plaintiff sought treatment with Dr. King on February 19, 2007. Dr. King diagnosed unstable left ankle secondary to retear of the anterior talofibular ligament and the calcaneofibular ligament, status post-Brostrum procedure and loose body excisions. Dr. King recommended surgery for Plaintiff but released her to return to light duty work until such time as the surgery was performed.
4. After being released by Dr. King, Plaintiff worked at a desk job until March 29, 2007 when Dr. King performed reconstructive surgery on her left ankle. *Page 4 
5. On November 12, 2007, Dr. King noted that Plaintiff had reached maximum medical improvement and gave her a permanent partial impairment rating of 23% for her left foot. Defendant does not contest the compensability of Plaintiff's February 11, 2007 left ankle injury or Dr. King's rating.
6. In addition to her ankle injury, Plaintiff contends that her February 11, 2007 work related accident exacerbated her pre-existing back problems or caused new back problems.
7. On August 13, 2007, Dr. King diagnosed Plaintiff with probable reflex sympathetic dystrophy, also referred to as complex regional pain syndrome, type I ("CRPS"), a pain syndrome that sometimes arises after an injury or surgery to an extremity. Dr. King referred Plaintiff to Dr. Christopher Gilmore of Carolinas Pain Institute, who began treating Plaintiff for her CRPS and back problems on September 6, 2007. Following a physical examination and review of Plaintiff's March 2, 2007 MRI, Dr. Gilmore diagnosed lumbosacral radiculopathy with complex regional pain syndrome type 1 of the left lower extremity. He recommended continuing physical therapy and hydrotherapy, a series of left lumbar sympathetic blocks, a possible left S-1 selective nerve root block, and an increase in Plaintiff's Lyrica dosage.
8. After a left lumbar sympathetic block failed to provide Plaintiff relief, and Plaintiff reported that her relief from medication did not last long enough, Dr. Gilmore recommended a spinal cord stimulator trial.
9. The spinal cord stimulator, which was placed on February 11, 2008, provided relief in Plaintiff's bilateral lower extremities but did not resolve her low back pain.
10. Dr. Gilmore allowed Plaintiff to return to work on September 17, 2008, four hours per day at a stationary job, wearing an open shoe, with no lifting greater than 10 pounds and no twisting or bending of her back. Defendant provided Plaintiff with a position in an office which *Page 5 
involved entering information from other crime scene investigators' time sheets into Defendant's computer system, and facilitating one photographic lineup per week. Prior to Plaintiff filling the position, crime scene investigators entered their own time sheet information into Defendant's computer system and facilitated photographic lineups themselves. Furthermore, there was no separate position which encompassed Plaintiff's duties, and when Plaintiff left the position on July 30, 2009, she was not replaced. Also, there were no other part time employees in Plaintiff's department.
11. The Full Commission finds that Plaintiff's light duty work for Defendant after September 17, 2008 was "make work," as it did not constitute a job that was available in the competitive labor market.
12. From the time of her work related accident on February 11, 2007, until July 30, 2009, Plaintiff was paid appropriate compensation for total or partial wage loss.
13. On December 12, 2008, Plaintiff began treating with Dr. Nyree K. Thorne, a gastroenterologist with Wake Forest Gastroenterology-Digestive Health Center, for gastrointestinal problems.
14. On May 6, 2009, Plaintiff suffered an avulsion fracture to her left foot unrelated to her compensable accident. The avulsion fracture did not heal, and after initial reluctance due to the risk of aggravating Plaintiff's CRPS, Dr. Robert Teasdall performed surgery to remove a piece of bone that was interfering with healing. According to Dr. Gilmore, the CRPS caused by Plaintiff's compensable injury interfered with treatment and healing of the avulsion fracture, and the fracture made the CRPS somewhat worse, thereby necessitating additional treatment for Plaintiff's CRPS. *Page 6 
15. While the orthopedic and surgical treatment for Plaintiff's avulsion fracture was not causally related to her compensable injury, any aggravation of Plaintiff's CRPS resulting from her avulsion fracture was the natural consequence of Plaintiff's CRPS and was, therefore, caused by her compensable injury.
16. On November 6, 2009, Dr. Gilmore returned Plaintiff to light duty work with varying degrees of success. On February 18, 2010, Dr. Gilmore gave Plaintiff a 20% permanent partial impairment rating to her back with instructions to return to work in her previous light duty job for four hours per day the first month, six hours per day the next month, and eight hours per day thereafter.
17. On July 30, 2009, Dr. Thorne wrote Plaintiff out of work for her medical problems including severe nausea, vomiting, and bloating. Dr. Thorne opined that there were three factors causing Plaintiff's nausea, vomiting and bloating. The first factor was chronic use of narcotic pain medications, which she stated were known to slow the gastrointestinal tract. The second factor noted by Dr. Thorne was Plaintiff's adrenal insufficiency, which she indicated can also induce nausea, vomiting and abdominal discomfort. Dr. Thorne opined that Plaintiff's adrenal insufficiency was likely due in part to medications such as steroids which Plaintiff was taking for back pain. The third factor which Dr. Thorne noted was gastroesophogeal reflux disease, which Dr. Thorne opined Plaintiff suffered from severely despite taking medication for the condition.
18. After Plaintiff's departure from the light duty position, her Employer continued to pay her compensation at the same rate she received for partial disability based on her reduced wage. However, Plaintiff no longer received the wage portion of her income. *Page 7 
19. In addition to the aforementioned left ankle and back problems, Plaintiff's complex medical history prior to her work related injury also includes chronic prescription narcotic and opioid use, fibromyalgia, post traumatic stress disorder, depression, gastrointestinal issues including irritable bowel syndrome and acid reflux disease, chronic neck pain, shoulder pain, chronic left ankle pain, left ankle instability, and shoulder surgery. After learning of Plaintiff's prior medical history, Defendant filed a Form 33 Request that Claim be Assigned for Hearing on August 31, 2009, stating that Plaintiff was not disabled from a work related injury.
20. Dr. Gilmore could not say with any degree of certainty what caused Plaintiff's lower back pain, or whether it was a result of an exacerbation, a new injury or just a continuation of an old injury. He opined that the opioid and narcotic pain medications Plaintiff was taking would not be prescribed for patients suffering only from CRPS and that her pain medications were prescribed primarily to treat her lower back pain. Finally, Dr. Gilmore was unaware of any serious gastrointestinal problems experienced by Plaintiff as a result of her pain medications other than some constipation.
21. Dr. Sean Maloney, who was Plaintiff's treating physician in 2004, opined that Plaintiff's lower back pain was caused by a virus inflammatory response and vitamin D deficiency which predated Plaintiff's work related accident. Plaintiff informed Dr. Maloney that her symptoms were so severe that she was rendered disabled by them in 2004. Dr. Maloney opined that Plaintiff's virus inflammatory response and vitamin D deficiency would continue to cause chronic pain which would become progressively worse.
22. After reviewing Plaintiff's prior medical records, which she had not seen prior to her deposition, Dr. Thorne stated that it was no longer her opinion that Plaintiff's *Page 8 
gastrointestinal problems were the result of her work related accident. Rather, Dr. Thorne opined that Plaintiff's gastrointestinal problems were probably due to her chronic narcotic and opioid medication use which began before her work related accident.
23. The Full Commission finds that it would have been futile for Plaintiff to look for employment from July 30, 2009 and continuing considering her restrictions relative to her compensable injury as well as the medical conditions for which Plaintiff had been written out of work by Dr. Thorne. Furthermore, Plaintiff's inability to continue in the position provided by Defendant, which was so extremely modified as to be unproductive "make-work" that other employers would not offer in the competitive job market, is further evidence of this.
24. Defendant has not defended this claim unreasonably.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On February 11, 2007, Plaintiff sustained an injury by accident to her left ankle arising out of and in the course of her employment with Defendant as the result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
2. In Peoples v. Cone Mills Corp.,316 N.C. 426, 342 S.E.2d 798, (1986), the North Carolina Supreme Court stated:
 If the proffered employment does not accurately reflect the person's ability to compete with others for wages, it cannot be considered evidence of earning capacity. Proffered employment would not accurately reflect earning capacity if other employers would not hire the employee with the employee's limitations at a comparable wage level. The same is true if the proffered employment is so modified because of the employee's limitations that it is not ordinarily available in the competitive job market.
Id. at 438, 342 S.E.2d at 806. *Page 9 
3. In the instant case, the position Plaintiff began working in on September 17, 2008 was a job modified for Plaintiff. The position was so modified to accommodate Plaintiff's restrictions that it would not have ordinarily been available in the competitive job market. Therefore, Plaintiff's performance of the job is not evidence of her earning capacity. Id.
4. In order to meet the burden of proving continuing disability, an employee must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by the employee's injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993). When a plaintiff meets his burden of showing disability, the burden then shifts to defendant to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001).
5. In the instant case, Plaintiff has met her initial burden to show that she was totally disabled since her departure from the light duty position on July 30, 2009, by showing that a job *Page 10 
search would be futile due to her injury and other conditions.Russell v. Lowe's Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993).
6. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of her compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen Plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25. This includes treatment for Plaintiff's February 11, 2007 left ankle injury and related CRPS, but does not include treatment for Plaintiff's gastrointestinal or back problems.
7. Defendant has not defended this claim unreasonably. Therefore, Plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay for all medical treatment rendered for Plaintiff's left ankle injury of February 11, 2007 and her resulting CRPS. Plaintiff's claims for medical treatment for her gastrointestinal and back problems are denied.
2. Defendant shall pay compensation at the rate of $394.33 per week from July 30, 2009 through the present and continuing until further order of the Industrial Commission, subject to the attorney's fees approved below.
3. Defendant will deduct from the amount awarded 25% of the compensation due and pay that directly to Plaintiff's attorney as a fee. As additional compensation becomes due, *Page 11 
Defendant will continue to pay the fee, by payment of every fourth check directly to Plaintiff's attorney.
4. Defendant will pay the costs, which include an expert witness fee of $585.00 to Dr. Kornegay, $800.00 to Dr. King, $900.00 to Dr. Ramos, $600.00 to Dr. Maloney, $700.00 to Dr. Gilmore and $1,000.00 to Dr. Thorne if not already paid by prior order.
This the ___ day of June 2011.
 S/___________________ LINDA CHEATHAM COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1